**CITY OF HOUSTON, et al, Appellant,**

v.

**James M. ALBRIGHT, Appellee.**

**No. C14–82–815CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 19, 1984.

Rehearing Denied Feb. 16, 1984.

F.J. Coleman, Jr., City Atty., John R. Whittington, Jr., Asst. City Atty., Houston, for appellant.

Gerald M. Birnberg, Williams, Birnberg & Anderson, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and DRAUGHN and CANNON, JJ.

## OPINION

DRAUGHN, Justice.

The City of Houston appeals from the district court's grant of a writ of mandamus ordering it to promote Houston police captain, James Albright, to the position of deputy chief. In five points of error the City of Houston contends that the trial court erred as a matter of law in granting the writ, and that several of the trial court's findings were not sufficiently supported by the evidence. We agree, and reverse the judgment of the trial court.

On August 19, 1976, James Albright, then a captain in the Houston Police Department, was certified as eligible to be promoted to the next highest rank of deputy chief. Albright and the others attaining such eligibility were placed on a list ranking them in order of their eligibility test scores. This list was to be used for one year to provide police officers to fill vacancies in the deputy chief position. During the course of the year, vacancies appeared and the five officers ranking above Albright were promoted, leaving Albright in the number one position.

In the meantime, major personnel changes were taking place in the upper echelons of the Police Department. Harry Caldwell, an assistant chief, was selected to become chief of police. His appointment left a vacancy for assistant chief. James McKeehan, then a deputy chief, was at the top of the eligibility list to be promoted to assistant chief. Caldwell's assistant chief position became vacant on June 27, 1977. McKeehan was eligible at that time for promotion to the position. Upon McKeehan's promotion, his position of deputy chief would become vacant, for which, Albright would then be eligible.

Pursuant to art. 1269m § 8 of the Texas Revised Civil Statutes, the City had 90 days within which to fill the position of assistant chief. Thus, McKeehan's promotion had to be made by approximately September 27, 1977. Sometime between late July 1977 and August 10, 1977, processing of the necessary paperwork for his promotion to

assistant chief began. However, before its completion, then Houston Mayor Hofheinz had the paperwork retrieved and the promotion process was thus halted.

In the interim, Albright's eligibility list expired by law on August 19, 1977. McKeehan was promoted shortly thereafter to the assistant chief position. Because his eligibility list had expired, Albright was no longer eligible for, nor was he appointed to, the deputy chief position vacated by McKeehan. Albright thereafter sought a writ of mandamus from the district court, requesting that the court order the City of Houston to promote him. The district court granted the writ, holding that Albright had been improperly denied the promotion for political reasons in violation of article 1269m.

■ The City of Houston now contends that the trial court erred as a matter of law by granting the writ of mandamus. In order for a writ to be proper, the right of the person requesting the writ must be so free from doubt that performance of the act should be compelled. *Busby v. Rabe*, 638 S.W.2d 235, 237 (Tex.App.—Tyler 1982, no writ). It cannot be used to establish or enforce an uncertain or disputed claim. *Id.* See *Cobra Oil & Gas Corp. v. Sadler*, 447 S.W.2d 887, 895 (Tex.1969) (on motion for rehearing). We find Albright did not prove a clear right to the mandamus. The basic rationale of the district court's decision was that Albright had a "right" to compel the promotion of McKeehan prior to the expiration of Albright's own eligibility list. In effect, he claims a right to a "speedy vacancy." We disagree.

■ The law is clear that the city had 90 days within which to fill the assistant chief position for which McKeehan was eligible. There are no guidelines specifically directed toward actions within this period. Rather, the article contains simply a general statement that the purpose of these civil service laws is to secure promotions free from political influence. Tex.Rev.Civ.Stat. Ann. art. 1269m § 16a (Vernon Supp.1982–83). Albright, at most, presented a disputed claim that such influence was exerted

here. The overwhelming majority of the evidence indicated that the mayor and the upper ranking officers pulled the McKeehan papers to provide time to consider further methods directed at totally eliminating, for efficiency reasons, the assistant chief position to which McKeehan was to be promoted. Because Albright failed to demonstrate a clear, undisputed right to be promoted, we sustain the City's point of error in this regard.

■ The City further contends that several of the court's findings were not sufficiently supported by the evidence. It claims that there was no evidence to support the finding that Albright was denied his promotion on the basis of political differences and not because of any job-related municipal purposes. In reviewing a "no evidence" point, we consider only the evidence favorable to the finding, and disregard all contrary evidence. *Kelly v. Murphy*, 630 S.W.2d 759, 761 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.). If, upon such a review, we find there is a complete absence or only a scintilla of evidence to support the findings, the "no evidence" point will be sustained. The only evidence that the mayor was denying the promotion based on political differences was: first, testimony that the mayor knew of Albright's friendship with an ex-police officer suspected of breaking into a police office property room; second, testimony from the mayor's aide that he "gathered" that the mayor pulled the papers to deny Albright the promotion; and third, that the mayor made a statement to the press that there was some controversy regarding the promotion. Regarding the connections with the ex-police officer, no evidence was introduced indicating that this in any way influenced the mayor's decision. Secondly, the aide testified that he was not sure if the mayor had ever said anything to that effect, or if he simply surmised it in light of the turn of events. As to the latter, Mayor Hofheinz was quoted as saying in one newspaper that "the *appointment* was controversial," but in another paper that "the *matter* was controversial," since the mayor and the police chief both felt the

position itself should be abolished. This amounts to no more than a scintilla of evidence and, accordingly, the City's "no evidence" point is sustained.

■ Similarly, the City argues that the court's findings of political influence and that the City lacked good faith as related to the abolishment of this deputy chief position were against the great weight and preponderance of the evidence. Even though we have sustained the no evidence point regarding this question, we must, in the interest of appellate efficiency, address the insufficiency of evidence point also. *See* Calvert, *"No Evidence" and "Insufficient Evidence"* Points of Error, 38 Texas L.Rev. 361, 370 (1960). In reviewing these points, we must examine the entire record. *Liberty Mutual Ins. Co. v. Rosas*, 630 S.W.2d 504, 506 (Tex.App.—Fort Worth 1982, no writ). After conducting such a review, we find that there is some credible evidence supporting both sides, but that the conclusions reached are so against the great weight and preponderance of the evidence as to be manifestly unjust.

In addition to the evidence discussed above, there was an overwhelming amount of uncontradicted testimony from the mayor and several high ranking police officers that there was a legitimate municipal purpose in retrieving McKeehan's promotion papers initially. The mayor strongly felt that McKeehan's assistant chief position was unnecessary and his actions in retrieving the papers were simply an attempt to eliminate the position. Accordingly, we find the court's conclusion regarding the presence of political influence directed at Albright personally is against the great weight and preponderance of the evidence. The City's point of error in that regard is sustained.

The court also concluded that the City of Houston lacked good faith in abolishing still another deputy chief position on April 19, 1977. This particular deputy chief position was vacated by the death of a deputy chief and was thereafter abolished by a vote of the city council. Although Albright

was not number one on the eligibility list when this position became vacant, the court found that because there had been five prior unused opportunities to abolish the position, the abolishment at this particular time reflected lack of good faith. While there had been earlier opportunities to eliminate the deputy chief position, most of these occurred under different mayors and police chiefs. The police hierarchy is a personnel decision unique to each individual administration. There was ample evidence that this administration felt the hierarchy was top-heavy and that, ideally, there should be eight deputy chiefs instead of the eleven that existed when Chief Caldwell took office. Here the elected city council was vested with the authority to eliminate such positions and properly did so. The timing of the abolishment alone is not sufficient evidence of bad faith. The finding that the elimination of the deputy chief position was carried out in bad faith was against the great weight and preponderance of the evidence.

Finally, the City urges that the trial court erred in finding that the actions of the city officials in retrieving the McKeehan papers constituted political influence. Again, the evidence overwhelmingly shows that the retrieval was not an exertion of political influence directed at Albright, but rather was an effort to streamline the makeup of the police hierarchy, which incidentally had the effect of denying Albright a possible promotion. This point of error is thus sustained.

Accordingly, the judgment of the trial court is reversed and judgment is here rendered denying the application for writ of mandamus.